GOSSAGE, Appellant, *v.* PENNINGTON COUNTY, Respondent.

**Statutes — Construction — Contract — Construction.**

> Chapter 52, Laws 1883, provided that the county treasurer shall charge and collect a certain sum as " compensation for publishing " the notice of delinquent tax sale, " which sum shall be paid into the county treasury, and the county shall pay the costs of publication." Section 1, chapter 51, approved March 11, 1887, provided that " in all cases where publication of legal notices of any kind are required, * * * the person * * * shall be required to pay " the rates therein specified. A party contracted with a county to publish " all notices * * * at the established rates approved March 11, 1887." Part of the work done by him was publishing the delinquent tax list. *Held,* his compensation therefor was to be determined by the act of 1887, not by what the treasurer had charged, and that the 1887 rate was in accordance with the terms of his contract. CARLAND, J., dissenting.

(Argued and determined at the October Term, 1888.)

APPEAL from the district court, Pennington county; Hon. CHAS. M. THOMAS, Judge.

This is an appeal from a judgment entered upon an agreed state of facts, wherefrom it appears that the county commissioners of Pennington county advertised for bids " for the county printing for the year 1887; " that the bid of the plaintiff was accepted April 11, 1887; that as to the matter in controversy it was that he would publish " all notices in the *Daily* or *Weekly Journal* at the established legal rates approved March 11, 1887;." that he published the notice for the sale for the delinquent taxes for the year 1886 ; that in making up his account for this he charged twenty cents for each tract, and ten cents for each town lot included in each description ; and when more than one town lot was included in one description he charged the same as though it had been described alone; that the list published was correct according to the copy furnished by the county treasurer ; that the treasurer charged the owners for advertising each of the said tracts the same as though they had been separately advertised; that plaintiff presented to the commissioners a bill for $912.90 for this work; that they allowed him $222.25 therefor. The plaintiff appealed to the district court from this allowance, and the court on the foregoing facts affirmed the action of the commissioners, whereupon plaintiff appealed to this court.

The bill presented to the commissioners was on the basis of the rates that could be charged under chapter 52, Laws of 1883, and that had been charged delinquents by the treasurer. The rates allowed by the commissioners were those provided by section 1, chapter 51, Laws of 1887.

Chapter 52, Laws of 1883, was as follows: "An act providing compensation for publishing tax sale."

" SECTION 1. The county treasurer shall charge and collect, in addition to the taxes and interest and penalty, the sum of twenty cents on each tract of real property, and ten cents on each town lot advertised for sale, which sum shall be paid into the county treasury, and the county shall pay the costs of publication; but in no case shall the county be liable for more than the amount charged to the delinquent lands for advertising." The remaining sections relate to the repeal of other acts and when this shall go into force.

The 1887 act, by which plaintiff's compensation was determined, so far as material, is stated in the head-note.

*Mitchell & King* and *William Gardner*, for appellant.

Appellant's proposal was to publish the tax list " at legal rates." The question is, are those rates prescribed by chapter 52, L. 1883, or by chapter 51, L. 1887. It is not disputed but that the rates charged were according to the former chapter, and appellant is entitled to the amount unless the 1887 act repealed the prior law. The legislature from the beginning has contemplated and provided for two classes of printing, the tax list and legal advertisements. § 61, chap. 28, Pol. C.; § 22, chap. 39, Pol. C.; chap. 52, L. 1883; chap. 53, L. 1883; chap. 51, L. 1887.

Chapter 52, L. 1883, and chapter 51, L. 1887, are not irreconcilable. Potter Dwarris St. 144; Metropolitan T. Co. v. Pennsylvania Co., 25 Fed. Rep. 761; Schwenke v. Union D. Co., 4 Pac. Rep. 906; McCool v. Smith, 1 Black, 659; Wood v. U. S., 16 Pet. 342; Hartford v. U. S., 8 Cr. 109; Brace v. Schuyler, 4 Gilm. 271; Hume v. Gossett, 43 Ill. 299; Fowler v. Perkins, 77 id. 274; Wragg v. Penn. T., 94 id. 16; People v. Brayton, id. 343; East St. Louis v. Maxwell, 99 id. 441; Bar v. People, 103 id. 112; U. S. v. Langston, 118 U. S. 390; Crow Dog, 109 id. 556; Chew Heong v. U. S., 112 id. 536; State v. State, 17 Wall. 425;

Furman v. Nichol, 8 id. 44; Attorney-General v. R. R. Co., 35 Wis. 425.

The act of 1883 was special, for the regulation of a single sub ject, and is not repealed by the general affirmative act of 1887 which has no repealing clause. Ottawa v. La Salle Co., 12 Ill. 339; Gunnahrson v. City, 92 id. 573.

*W. I. Walker*, for respondent.

The inquiry is, what were "legal rates" at the time this contract was made, April 11, 1887? Chapter 52, L. 1883, was intended to provide compensation for publishing the notice and makes the county liable instead of the treasurer (as was the case under section 61, chapter 28, Pol. C.); but it was not intended to provide the amount the county should pay; this was fixed by section 1, chapter 58, L. 1883, and so remained till the act of 1887, chapter 51, when it was changed, and this change governs here.

By the COURT:

The judgment in this case is affirmed for the reason that the amount allowed appellant for printing the tax list of the respondent for the year 1886, is in accordance with his contract, and with section 1, chapter 51, L. 1887, which fixes the legal rate for such printing. All concur except CARLAND, J., dissenting.